NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0089n.06

No. 08-5893

## UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

JULIANNE BORDEN,

     Defendant-Appellant.

_____/

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE MIDDLE
DISTRICT OF TENNESSEE

**FILED**
**Feb 16, 2010**
LEONARD GREEN, Clerk

BEFORE:    MARTIN and WHITE, Circuit Judges, and ZOUHARY, District Judge.[*]

     BOYCE F. MARTIN, JR., Circuit Judge.

     Julianne Borden appeals both the procedural and substantive reasonableness of her sentence

of 30 months' imprisonment, imposed after she pled guilty to one count of mail fraud and one count

of wire fraud. Procedurally, she alleges that the district court failed to recognize its ability to vary

from the Guidelines. Specifically, she claims that the district court was operating under the incorrect

belief that it could only impose a sentence of probation via the Guidelines departure mechanism

rather than also being able to vary downward under the section 3553(a) analysis. Substantively,

Borden claims that a sentence of 30 months in prison, despite being at the bottom of the advisory

_____

[*]The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio,
sitting by designation.

Guidelines range, is unreasonably excessive in light of the nature and circumstances of the crime and

Borden's history and characteristics. Finding no error, we **AFFIRM**.

**I.**

Borden is a mother of five who is married to an Army helicopter pilot. Unconnected to this

case, she has had a long-running problem with managing her money and avoiding debt, and has

declared bankruptcy at least once. Additionally, she has been diagnosed with several psychological

disorders including Dependent Personality Disorder, which is characterized by a difficulty in

disagreeing with others for fear of disapproval and by a willingness to go to extreme lengths to

please others.[1]

This case arises from a fraud scheme that was simultaneously naive and relatively

sophisticated. It was naive in that the purpose of the scheme was not personal gain, but rather to pay

for an $85,000 homecoming celebration for her husband's Army unit that was returning home from

combat deployment in Iraq. Unable to raise sufficient funds via donation or t-shirt sales, Borden

personally incurred a substantial amount of debt to pay for the party, apparently without considering

how she would pay the bills. When she could not repay the initial debt, Borden began taking out

successive short-term loans at extremely high interest rates. Each loan was to retire the prior debt,

and each loan was larger than the last. The terms of the loans were such that no reasonable person

could expect to be able to repay the principal and interest in such a short time.

---

[1]The United States does not dispute that these symptoms are associated with the disorder known as Dependent Personality Disorder and, in the district court, did not dispute Borden's diagnosis with this disorder. The United States did, however, dispute that the disorder provided any excuse for Borden's actions and opposed any sentencing leniency, either via departure or variance, tied to this disorder.

Borden's crime occurred when she obtained the second and third loans under false pretenses and by fraudulent misrepresentations, and this is also where the sophistication arises. Borden had worked for several years in the real estate business, and had substantial knowledge about the paperwork required to make loans appear legitimate. When she was unable to repay her first loan, Borden contacted an individual in Las Vegas and told him that she worked with an organization that provided soldiers returning from Iraq with all-expenses-paid, weekend-long vacations with their spouses and that the organization had obtained a federal grant to cover the costs of the vacations. She stated that the organization simply needed a loan pending receipt of the federal funds. There was no such organization, and there was no such federal grant. Nevertheless, Borden obtained a total of $110,000 in loans, due in full plus 18% interest in approximately two months. Borden created false promissory notes and forged the name of an attorney in connection with this transaction.

When the two months had passed and Borden was, of course, unable to repay the debt, she wrote herself a check for $140,000 on the bank account of a man who had been deployed to Iraq. The man had given Borden his power of attorney and three blank checks to be used on legitimate real estate transactions and, apparently, was unaware of her decision to use his money to repay her personal debt. She used the money to repay the second loan and thus owed this man $140,000.

She therefore obtained a third loan to reimburse the account on which she had drawn the $140,000 check to retire the second loan. This time, she falsely stated to an investor that the realtor for whom she worked needed a $150,000 bridge loan to close on a contract for a large parcel of land. Upon the investor's request for documentation substantiating the deal, Borden forged a commitment letter from a bank, an escrow statement from a real estate company, a contract signed by the

supposed parties to the sale, copies of powers of attorney, deeds of trust for the property, and a lease.

Relying on these forged documents, the investor provided a loan of $150,000 to Borden. The entire

balance plus 15% interest was due within one week. Borden used the $150,000 to reimburse the

account of the man for whom she had received power of attorney, but she was not able to obtain a

fourth loan before the scheme unraveled. Borden was approached by the authorities and admitted

to the fraud.

At sentencing, Borden requested that the court sentence her to probation rather than to the

33-41 months in prison recommended by the Guidelines. She asked that the court either downward

depart under the Guidelines sufficient to reach an offense level that would permit a sentence of

probation or vary downward from the Guidelines range to impose a sentence of probation, or a

combination of the two.[2]

The basis for Borden's motion for a downward departure was her family situation (as a

military spouse whose husband was subject to long deployment, Borden was often alone with the

five children) and her diminished mental capacity, primarily the Dependent Personality Disorder and

depression issues. The court granted Borden a downward departure under section 5K2.13 of the

---

[2]We have previously explained the difference between a Guidelines-based departure and a variance: "'Departure' is a term of art under the Guidelines and is distinct from 'variance.' A Guidelines 'departure' refers to the imposition of a sentence outside the advisory range or an assignment of a criminal history category different than the otherwise applicable category made to effect a sentence outside the range. Importantly, a departure results from the district court's application of a particular Guidelines provision, such as § 4A1.3 or § 5, Part K. A 'variance' refers to the selection of a sentence outside of the advisory Guidelines range based upon the district court's weighing of one or more of the sentencing factors of § 3553(a). While the same facts and analyses can, at times, be used to justify both a Guidelines departure and a variance, the concepts are distinct." *United States v. Grams*, 566 F.3d 683. 686-87 (6th Cir. 2009) (internal citations and quotations omitted).

Guidelines, which required finding that: (1) Borden was suffering from a significantly reduced mental capacity; (2) the reduced mental capacity contributed substantially to the commission of the offense; and (3) Borden's prior criminal history does not indicate a need to incarcerate her to protect the public. U.S.S.G § 5K2.13. However, instead of departing downward to an offense level that would place Borden in Zone A or Zone B of the Guidelines grid, and thus eligible for probation, the court departed by only one offense level, producing a revised Guidelines range of 30-37 months. The court then sentenced Borden to 30 months. Borden timely appealed.

## II.

On appeal, Borden contends that the sentence was procedurally and substantively unreasonable. Procedurally, Borden claims that, although it granted the downward departure, the district court failed to address her request for a variance. She argues that the sentencing transcript indicates that the court believed itself to be constrained to sentencing her within the revised Guidelines range and did not recognize its ability to vary from the Guidelines to impose a sentence of probation. Substantively, Borden argues that, although 30 months was within the Guidelines range and thus presumptively reasonable, it was in fact unreasonable given Borden's virtuous motives in engaging in the fraud, her familial situation, her mental state, and her stated desire to make restitution to the third lender who was never repaid.

We review sentences for reasonableness under an abuse-of-discretion standard. *See Gall v. United States*, 552 U.S. 38, 46 (2007); *United States v. Sedore*, 512 F.3d 819, 822 (6th Cir. 2008). A proper sentence must be both procedurally and substantively reasonable. *Sedore*, 512 F.3d at 822.

A district court commits procedural error and abuses its sentencing discretion by:

failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence–including an explanation for any deviation from the Guidelines range.

*Gall*, 552 U.S. at 51.

Under 18 U.S.C. § 3553(a), a sentencing court must consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed–

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

> (B) to afford adequate deterrence to criminal conduct;

> (C) to protect the public from further crimes of the defendant; and

> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; . . . .

18 U.S.C. § 3553(a)(1)-(2).

A reviewing court must also consider the substantive reasonableness of the sentence. *Gall*, 552 U.S. at 51. A sentence may be substantively unreasonable if the sentencing court "select[ed] the sentence arbitrarily, bas[ed] the sentence on impermissible factors, . . . or [gave] an unreasonable amount of weight to any pertinent factor." *United States v. Ferguson*, 456 F.3d 660, 664 (6th Cir. 2006) (quotation marks omitted). However, the "touchstone" of substantive reasonableness is "whether the length of the sentence is reasonable" when viewed against the backdrop of the section 3553(a) factors. *United States v. Tate*, 516 F.3d 459, 469 (6th Cir. 2008). We grant a rebuttable

presumption of substantive reasonableness to sentences within a properly calculated advisory

Guidelines range. *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006).

Where the defendant claims that the sentencing court was not aware of or misunderstood its

full authority, we will remand only if there is clear "indication of error in the record"; "mere

conjecture" that the court was operating under a misunderstanding of its authority is not grounds for

remand because, by now, the default assumption is that sentencing courts are aware of their authority

to vary from the Guidelines. *United States v. Guest*, 564 F.3d 777, 779, 781 (6th Cir. 2009).

## A.     Procedural Reasonableness

Borden argues that the district court never addressed her request for a variance and, indeed,

did not recognize that it had the authority to vary downward under *Booker*. On this point, the

transcript shows that the court never actually uttered the word "variance." However, in our past

sentencing cases we have "not required that district courts carefully distinguish between whether the

decision to deviate from the advisory Guidelines range is based on a departure or variance," *United*

*States v. Herrera-Zuniga*, 571 F.3d 568, 586 (6th Cir. 2009), so choice of vocabulary is not

dispositive. Instead, we must examine the transcript of the sentencing hearing to determine whether

the court was aware of the proper sentencing procedure and its authority to vary from the Guidelines

range.

Our review of the transcript leaves us comfortable that this court was aware of its authority

to vary and, indeed, that the court considered Borden's request for a variance. First, the sentencing

judge repeatedly referred to the guidelines as "advisory." Though choice of vocabulary is not

dispositive, that this judge described the Guidelines as advisory is a solid indicator that he realized

they were indeed not binding.

Even more telling, however, is the manner in which the court progressed in its discussion. Borden's request was for probation, either via a Guidelines-based departure, a variance under section 3553(a), or a combination of the two. The court first addressed and granted the departure request, but not to an extent sufficient to produce a revised Guidelines calculation that would allow for a sentence of probation. (Sent. Tr. at 57:23-58:3). At this point in the analysis, if the court was of the belief that it had no authority to impose a sentence of probation via a variance, the court would have ended its analysis with no further discussion of the possibility of probation.

Instead, the court went on to explain why a sentence of probation was not, in its view, appropriate under the section 3553(a) factors, (Sent. Tr. at 62:21-63:6), and its discussion of those factors is lengthy and detailed. But, if the court had believed that its analysis of the section 3553(a) factors was relevant only for purposes of deciding where within the revised Guidelines range to sentence Borden, there would be no reason for the court even to discuss probation. This is so because the bottom of the range even after granting the one-level downward departure was 30 months. Because it is implausible that this court took the time to consider an option that it believed unavailable, we find that the court was aware of its authority to vary downward to a sentence of probation even after departing downward and that the court actually considered Borden's request for a variance.[3] We therefore find the sentence procedurally reasonable.

_____

[3]Borden makes much of the fact that another panel of our Court recently reversed this same district court under the same argument Borden makes here, that the court was unaware of its ability to go below the Guidelines, independent of a Guidelines-based departure, via a variance. *United States v. Simpson*, No. 08-5293, 2009 U.S. App. LEXIS 20701 (6th Cir. Sept. 16, 2009). It is true that in *Simpson* we reversed this court on a materially identical argument as the one Borden advances here. However, we find *Simpson* generally distinguishable from this case. In

**B. Substantive Reasonableness**

As for substantive reasonableness, Borden argues that a sentence of 30 months in prison is unreasonably excessive. She points to: (1) the nature of her crime, taking out a series of increasingly usurious loans, albeit under false pretenses, for the arguably virtuous cause of paying for a homecoming celebration for returning soldiers; and (2) her own personal characteristics, namely her Dependant Personality Disorder and role as de facto single mother of five children, as mitigating against a sentence of that involves any time in prison. While these factors certainly cut in favor of leniency, there are other facts that cut against Borden's position. She employed relatively sophisticated means to play on people's sympathies for returning soldiers in order to engage in her fraudulent scheme, and she also had a prior misdemeanor conviction for falsifying a check. Furthermore, though Borden expressed desire to make complete restitution, the loss sustained by the third lender was substantial, underscoring the seriousness of the offense. In cases such as this, where there are facts strongly cutting both for and against leniency, we are hesitant to second-guess the sentencing judge's on-the-scene appraisal of the situation. Because Borden has not rebutted the presumption of reasonableness attaching to a within-Guidelines sentence by establishing that a lesser sentence is required under section 3553(a), we find the sentence substantively reasonable. *United States v. Rosenbaum*, 585 F.3d 259, 267 (6th Cir. 2009).

**III.**

---

*Simpson*, we described an analytical sequence by the district court that was irreconcilable with anything other than the conclusion that the district court "effectively treated the Guidelines' limitations on departures as mandatory." *Id.* at \*17. Here, however, the court's analysis, discussing probation after it had granted only a one-level departure, makes sense only if the court was aware of its authority to vary downward to a sentence of probation. For this reason, and several others, we find *Simpson* distinguishable.

For the reasons set forth above, we **AFFIRM** the judgment of the district court.