RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 11a0022p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

  *Plaintiff-Appellee,*

  *v.*

No. 08-1180

HUEL LOCKLEAR,

  *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 04-80170-001—Avern Cohn, District Judge.

Argued: July 27, 2010

Decided and Filed: January 28, 2011

Before: GIBBONS and KETHLEDGE, Circuit Judges; SARGUS, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Todd A. Shanker, FEDERAL DEFENDER OFFICE, Detroit, Michigan, for Appellant. Kathleen Moro Nesi, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:** Todd A. Shanker, FEDERAL DEFENDER OFFICE, Detroit, Michigan, for Appellant. Kathleen Moro Nesi, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

_____

**OPINION**

_____

  KETHLEDGE, Circuit Judge. Huel Locklear challenges his convictions and sentence for bank robbery and being a felon in possession of a firearm. His principal argument is that the two charges against him were misjoined for trial. We agree with

---

[*]The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

that argument. After reviewing the entire record, however, we conclude that the misjoinder, though regrettable, was harmless. We otherwise reject Locklear's argument that his sentence was procedurally unreasonable; but we agree with both parties that Locklear was denied his right to allocute during his sentencing hearing. We therefore affirm his convictions, vacate his sentence, and remand the case so that he can allocute if he chooses.

I.

A.

Around early December 2003, Regina Locklear (no relation to Huel) paid $300 cash for a 1982 Toyota Corolla wagon. Huel disputes many aspects of Regina's testimony at trial; but one point he does not specifically dispute is that he gave her the money for the car and waited at the end of the seller's driveway while she negotiated the deal.

That same Toyota was driven to and from the Bank of Lenawee in Adrian, Michigan, on the morning of Christmas Eve 2003. In between those drives the bank was robbed. Specifically, at about 9:15 that morning, a man entered the bank, jumped over the teller counter, and shouted for everyone to get down. The man wore a dark green ski mask with gray sunglasses beneath the eye openings and a piece of blue fabric pinned across the mouth opening, a long green trench coat with a camouflage hunting vest over it, green cargo pants, dark brown gloves, and white sneakers with red trim. Despite the getup, some of the robber's skin was exposed; one witness described him as "a tan or a very light-skinned Mexican American[.]" (Huel and Regina Locklear are Native Americans.) The robber spoke with a Southern accent. (Huel is from North Carolina.) He carried a blue cloth bag, into which he stuffed $14,776 from three teller-drawers. The robber also ordered the tellers to open the bank's vault, but they told him it was on a timer, so he fled.

The robber ran out to the Toyota, which then drove off. One witness followed the Toyota to an apartment complex, but lost sight of it around a bend in the service drive. A short while later, a light-colored Lincoln Towncar came back around the bend.

Police officers soon arrived and found the vacant Toyota parked at the complex. Around the car, in the snow, were two sets of footprints leading to an adjacent parking spot. That spot had tire tracks leading away from it. Over at the bank, officers found a set of footprints leading to where the getaway car had been. Those footprints matched one of the sets in the snow around the Toyota at the apartment complex.

From there the trail went cold until January 11, 2004. On that date, the Livonia police received an anonymous tip that Regina and "Whowell" Locklear had been involved in a bank robbery, that they were driving a white or silver Lincoln with North Carolina plates, and that they had recently purchased a black Lincoln Continental as well. The tip included an address where the couple could be found. Officers went to the address that evening and pulled over Regina as she drove away in a black Lincoln Continental. The plates on that car belonged to the silver Lincoln. The officers arrested Regina on an outstanding warrant. She eventually told them that Huel had robbed the bank on Christmas Eve and that he had brought a .357 revolver with him in the Toyota the morning of the robbery. She also said they could find Huel at her mother's home, located at 9280 Gilbert Highway in Onsted, Michigan.

That is a rural location. Christopher VanDyke, a Lenawee County deputy sheriff, drove there just after midnight on January 12. Dispatch told him to be on the lookout for Huel Locklear, who was armed and dangerous. VanDyke drove down the road with his lights off, shining a flashlight on the mailbox numbers as he crept along. As VanDyke approached 9280, he saw a vehicle moving down the driveway towards the road. At first, VanDyke thought the vehicle belonged to another deputy; but then he saw that it was a silver Lincoln. VanDyke flipped his spotlight onto the vehicle and saw two occupants. A "stand-off" ensued: "I wasn't sure what he was going to do. He wasn't sure what I was going to do." Finally, the Lincoln's driver opened his door, took a few

steps towards the trunk, and bolted for the woods. No one disputes that the driver was Huel Locklear.

A SWAT team and a K-9 deputy, Kurt June, soon arrived. June and his tracking dog began following Locklear's trail. They ran into difficulty: Locklear had repeatedly traveled in large circles through the woods and an adjacent swamp, which made it hard for the dog to tell where Locklear had broken away from the pattern. That, according to June, was the idea: "He was intentionally trying to throw my dog off." And Locklear had sometimes doubled back, so that "we would be tracking along and there would be nothing, there would be no tracks in the snow, not at all." After three hours without success, June gave up the chase.

The following evening—about 17 hours after the search began—a neighbor called police to report a man looking in her window. It was Locklear. This time the police found and arrested him.

On January 13—the day after Huel's arrest—officers obtained a warrant to search the silver Lincoln that Huel had been driving before he fled. The Lincoln's passenger area contained mail addressed to Huel Locklear and a certificate of title to the 1982 Toyota. The Lincoln's trunk contained the entire ensemble worn by the person who robbed the Bank of Lenawee: The green ski mask with the blue fabric pinned across the mouth, the gray sunglasses, the green trench coat, the camouflage vest, the green pants, the dark brown gloves, and a pair of white Nike sneakers with red trim. The trunk also contained the robber's blue laundry bag, a loaded .357 revolver, a loaded .25 caliber pistol (found in a pocket of the trench coat), a loaded .45 caliber pistol, a bolt-action military rifle, and various types of ammunition, some of it hollow-point.

A Michigan State Police forensic specialist determined that the Nikes "could not be eliminated as having made" the footprints found around the Toyota and at the bank. Other testing showed that the blue cloth mouthpiece contained DNA from two persons. The "primary contributor" was Huel Locklear.

B.

A federal grand jury charged Locklear with bank robbery in violation of 18 U.S.C. § 2113(a).  A superseding indictment added a second count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), citing the four firearms found in the Lincoln's trunk.  Locklear thereafter filed a bare-bones motion for severance of the two counts, arguing in conclusory terms that the two counts were not "temporally or logically related."  In response, the government argued that the counts involved common issues and evidence.  Neither party had anything to say about whether the two counts were related on the face of the indictment.  The district court denied Locklear's motion, holding that the two counts were related.

A jury thereafter convicted Locklear on both counts.  As calculated by the probation officer, the guidelines range for Locklear's sentence was 292-365 months' imprisonment.  The district court sentenced Locklear to 292 months.  This appeal followed.

II.

A.

Locklear argues that the bank-robbery and felon-in-possession charges were misjoined for trial.  The rule governing joinder of offenses provides:

> The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

Fed. R. Crim. P. 8(a).  We review issues of joinder de novo.  *United States v. Dietz*, 577 F.3d 672, 692 (6th Cir. 2009).

"Whether joinder was proper under Rule 8(a) is determined by the allegations on the face of the indictment."  *United States v. Chavis*, 296 F.3d 450, 456 (6th Cir. 2002).  Here, the superseding indictment provides:

COUNT ONE

( 18 U.S.C. § 2113 (a)— *Bank Robbery* )

That on or about December 24, 2003, in the Eastern District of Michigan, Southern Division, the defendant, HUEL LOCKLEAR, by intimidation, did take from the presence of a bank teller approximately $14,776.00 of the money belonging to and in the care, custody, control, management and possession of the Bank of Lenawee County, located at 1701 W. Maumee, Adrian, Michigan, the deposits of which were then insured by the Federal Deposit Insurance Corporation, in violation of Title 18, United States Code, Section 2113(a).

COUNT TWO

( 18 U.S.C. § 922 (g)(1)— *Felon In Possession Of A Firearm* )

That on or about January 11-13, 2004, in the Eastern District of Michigan, Southern Division, the defendant, HUEL LOCKLEAR, after having previously been convicted of at least one crime punishable by imprisonment for a term exceeding one year (felony offense), did knowingly and unlawfully possess firearms, that is, a Springfield Armory model 1911-A1 .45 caliber revolver, bearing serial number N38681O; a Taurus .357 Magnum revolver, bearing serial number 5185937; a Raven Arms Model P-25 .25 caliber semi-automatic pistol, bearing serial number 593855, a Military bolt action M27 7.62 X 54R rifle; said firearms having previously traveled in interstate commerce, in violation of Title 18, United States Code, Section 922(g)(1).

Measured by the allegations in the superseding indictment, the offenses described in these counts are not "of the same or similar character," or "based on the same act or transaction," or "connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). One offense occurred on December 23, 2004 and did not involve the possession of guns. The other occurred nearly three weeks later and involved nothing *but* the possession of guns. The indictment otherwise alleges nothing to show that the two offenses were part of a common plan. Their joinder fails the face-of-the-indictment test.

The government does not even argue the contrary. Instead, it argues that the test is inapposite: in its view, "the face of the indictment rule applies to justify joinder, not

to invalidate it." Gov't Br. at 15. That proposition may be true in other circuits, but it is not true in this one. One need look no further than *Chavis*, in which we applied the face-of-the-indictment rule to hold that the drug and gun offenses in that case were misjoined under Rule 8(a). *See* 296 F.3d at 458. We apply the same rule to reach the same result here. The offenses in this case were misjoined.

B.

"[A] determination of misjoinder is subject to harmless-error review under Rule 52(a) of the Federal Rules of Criminal Procedure, which permits reversal only for trial errors that affect substantial rights." *United States v. Cody*, 498 F.3d 582, 587 (6th Cir. 2007) (internal quotation marks omitted). To affect a defendant's substantial rights, misjoinder must have a "substantial and injurious effect or influence in determining the jury's verdict." *United States v. Lane*, 474 U.S. 438, 449 (1986) (internal quotation marks omitted). The Government bears the burden of persuading us that an error is harmless. *Chavis*, 296 F.3d at 461.

Here, Locklear argues that, absent misjoinder, the jury that convicted him of bank robbery would not have known two things: first, that he was a convicted felon (which of course the jury knew as a result of the felon-in-possession charge); and second, that he possessed a large cache of weapons and ammunition 19 days after the robbery. These two facts, Locklear contends, made him appear generally to be a dangerous person, and specifically to be the sort of person who might rob a bank. Thus, he says, the misjoinder substantially affected the jury's verdict on the bank-robbery charge. (He offers no reason why the misjoinder would have affected the jury's verdict on the felon-in-possession charge, and we see none either.)

The government offers three reasons why the joinder's effect was narrower than Locklear suggests. First, the government contends that evidence concerning the .357 revolver likely would have been admissible in a separate trial on the bank-robbery charge, since Regina Locklear testified that Huel brought that gun with him to the bank (though she said he did not take it inside). We think the government is correct on that point. The jury would have heard about the .357 even absent the misjoinder.

Second, the government contends that evidence of the two pistols (.25 and .45) and ammunition would have been admissible as well, since they were found among the robber's clothes in the trunk of the silver Lincoln. We disagree: the firearms were found with the clothes nearly three weeks after the robbery, which attenuates any connection with it; and the government otherwise offers no explanation as to why the pistols and ammunition would have been admissible in a robbery-only trial.

Third, the government contends that the prejudicial effect of Locklear's prior felony conviction was minimized because the specific crime for which he was previously convicted (bank robbery) was never revealed to the jury, and because he stipulated to the fact of his felony status, thereby preventing the jury from hearing testimony about it. We agree that the prejudicial effect of Locklear's felony status was limited in these respects.

The net effect of the misjoinder, then, was that the jury that convicted Locklear of bank robbery knew, first, that he was a felon; and second, that he possessed a total of four weapons (rather than just the .357) and ammunition 19 days after the robbery. Absent the misjoinder, the jury would not have known those things. The question presented is whether that knowledge had a substantial effect on the jury's finding that Locklear was guilty of bank robbery.

The answer to that question is no. We have reviewed the entire trial transcript in this case. And having done so, we hold that the error here was harmless for the same reason the same error was harmless in both *Lane* and *Chavis*: the evidence of the defendant's guilt was overwhelming. Here, the witnesses to the Bank of Lenawee robbery testified very specifically about the items that the robber had worn and carried during the crime. Those items were distinctive. The witnesses also confirmed that the items presented to them at trial—the ski mask with the blue patch, the trench coat, the camouflage vest, the brown gloves, the green cargo pants, the blue bag, etc.—were the actual items used by the robber. And every one of those items was found in the silver Lincoln that Locklear was driving just before he bolted for the woods on January 12, 2004. Moreover, the fact of Locklear's flight, and his remarkable efforts to elude capture in the woods of Michigan in January, were themselves strong evidence that he

knew full well what lay in the trunk of the Lincoln.  That the Lincoln contained Huel's mail is additional proof of that knowledge.  That the Lincoln also contained the title to the 1982 Toyota—the getaway car, and a disposable one at that—is further proof that Huel not only participated in the robbery, but planned it.  And then there is the fact—devastating to the defense—that the blue cloth on the ski mask was loaded with Locklear's DNA.

Locklear overlooks all this evidence, arguing instead that the direct evidence of his guilt—namely, Regina's testimony—was unreliable.  On this record his argument is ultimately beside the point.  True, the evidence recited above is circumstantial; but that shows only that circumstantial evidence, too, is sometimes overwhelming.

We also disagree with Locklear's contention that the government exploited the misjoinder with "an overwhelming overkill of gun and ammunition evidence" at trial.  Def. Reply at 3.  The government's presentation of this evidence was reasonably succinct and matter-of-fact.  Moreover, that Locklear possessed the guns in the Lincoln's trunk was hardly disputed at trial; and, as a result, the trial focused not on the gun evidence, but on the question whether Locklear robbed the bank.  The district judge ensured that the focus remained there.  The misjoinder of the counts against Locklear, given the record in this case, is not grounds for a new trial.

## C.

Locklear presents two challenges to his sentence.  First, he contends that his sentence was procedurally unreasonable.  Locklear argued in his sentencing memorandum that he should receive a sentence below the bottom of the guidelines range because of his age (then 62) and supposed ill-health.  During Locklear's sentencing hearing, the district court did not address these arguments specifically, but said there was "nothing in the record to warrant going outside the recommended guideline range, nothing in the 3553(a) factors."  The court then imposed a sentence at the very bottom of the guidelines range.  Locklear says the court committed procedural error when it omitted to address his arguments specifically.

We disagree. "Although Congress requires a court to give 'the reasons' for its sentence, 18 U.S.C. § 3553(c), it does not say that the courts must give the reasons for rejecting any and all arguments by the parties for alternative sentences." *United States v. Vonner*, 516 F.3d 382, 387 (6th Cir. 2008) (en banc). Here, Locklear's arguments were directed to the § 3553(a) factors. The district court said that it saw nothing with respect to those factors that supported a below-guidelines sentence. On this record, that response, "though brief, was legally sufficient." *Rita v. United States*, 551 U.S. 338, 356 (2007). We are satisfied that the district court considered Locklear's arguments and had a reasoned basis for rejecting them. *See id.* at 357.

Locklear also argues that the district court did not give him an opportunity to allocute at his sentencing hearing, and that the case should be remanded for that purpose. The government agrees with Locklear on both points. We agree as well. *See United States v. Haygood*, 549 F.3d 1049, 1055 (6th. Cir. 2008); Fed. R. Crim. P. 32(i)(4)(A).

*   *   *

We affirm Locklear's convictions, vacate his sentence, and remand the case so that he may allocute if he chooses.