**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 11a0431n.06**

**No. 08-1336**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| ANDRE VAN, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

**FILED**

***Jun 29, 2011***

LEONARD GREEN, Clerk

Before: SUHRHEINRICH, MOORE, and COOK, Circuit Judges.

COOK, Circuit Judge. A jury convicted Andre Van of drug distribution, possession of a firearm in furtherance of a drug-trafficking offense, and possession of a firearm by a convicted felon. The district court sentenced Van to 360 months' imprisonment. Van now appeals, claiming that the district court (1) improperly denied his Rule 8(a) motion to sever the felon-in-possession charge; (2) violated his due process rights by, among other things, describing a federal agent as an expert witness; and (3) failed to recognize the advisory nature of the Sentencing Guidelines. We affirm his conviction and sentence.

I.

A grand jury charged Andre Van with distribution of heroin and crack cocaine (counts one, three, four, and five); possession of a firearm in furtherance of a drug-trafficking crime (count two); and possession of a firearm by a convicted felon (count six). The drug charges stem from Van's interactions with an undercover ATF Special Agent, Michael Yott, who claimed that Van sold him drugs on four separate occasions over the course of a week. The felon-in-possession count arose a week after these drug buys when Detroit police discovered a firearm in Van's vehicle during a traffic stop.

Before trial, Van filed a Rule 8(a) motion to sever count six of the indictment, claiming its joinder would allow the government to "bootstrap" its elements into count two (possession of a firearm in furtherance of a drug-trafficking crime), which occurred nearly two weeks earlier. The district court denied the motion for lack of prejudice, and Van proceeded to trial on all six counts.

At trial, Van admitted to two of the drug buys but denied responsibility for the other two, including the purchase underlying the possession-of-a-firearm-in-furtherance-of-drug-trafficking charge. Van claimed that his nephew conducted those sales and that Van merely recommended Yott as a reliable customer. Yott wore a wire and recorded three of the transactions; the government introduced the recordings into evidence. It also introduced recorded telephone conversations between Van and Yott arranging for drug purchases.

Yott testified that Van had a firearm either nearby or on his person during all four transactions. According to Yott, during one buy, he and Van even "discussed the caliber of the

firearm, as well as a couple of jokes . . . about, you know, don't shoot yourself, that type of thing." Van does not contest that, during the initial drug buy, a revolver rested on the coffee table and a shotgun leaned against the wall. But Van disputes Yott's claim that Van carried this same revolver during the other transactions. Yott conceded that he could see only part of the gun during the latter three drug buys.

After the third drug purchase, Yott—who then knew Van only as "Dre"—directed two officers to conduct a traffic stop of Van's vehicle to procure identification. During this stop, one of the officers observed a brown leather holster in the bed of the truck, but did not see drugs or a firearm. While Van claims that the officers searched him and his truck, this same officer testified that he did not search Van, but did not recall whether his partner did.

A week after Van's final sale to Yott, Detroit police stopped Van for a traffic violation. Two officers attested that, as they attempted to pull Van over, they witnessed him bend downward "as [if] he was placing something by his feet or under the seat." As the officers approached, Van started to step out of his truck and one of the officers observed an empty holster on his left hip. When questioned about the empty holster, Van said that he "[wore] it for show." One of the officers spotted a blue steel .38-caliber revolver lying under the driver's seat. Van admitted that he did not have a concealed-carry permit, and the officers arrested him.

Detroit Police Sergeant Ramon Childs interviewed Van following his arrest. Childs testified that Van admitted to having a gun when arrested. According to Childs, Van said that "he had

got[ten] shot almost two weeks ago, and he . . . forgot his nephew had the pistol in the truck." When pressed by Childs as to why he really had the gun in his truck, Van said "for my protection." After the interview, Van initialed these statements. At trial, however, he denied bending forward in his truck, and again claimed that his nephew put the gun in his vehicle and that he did not know it was there.

A few weeks after Van's interview with Childs, ATF Special Agent Gregory Lotoczky videotaped an interview with Van. According to Lotoczky, Van admitted to selling crack. He also admitted to having a .38-caliber revolver that "he would wear . . . when he was at the house in his waistband" and "would . . . carry . . . out to his truck if he was going to the bank or something like that." Van maintained, however, that the gun police discovered at the traffic stop "didn't belong to him" and "was put in [his truck] by his nephew." Van refused to initial the majority of his statements as recorded by Lotoczky—including that he carried a .38-caliber revolver.

At trial, Van denied telling Lotoczky that he sold crack cocaine, carried the .38-caliber revolver in his waistband, or carried a firearm for protection. He accused Lotoczky of "changing the story around," and denied initialing some of the statements. Following Van's testimony, the government recalled Lotoczky. He testified that, on the night before, he reviewed the videotape of his interview with Van; and he confirmed that Van admitted to selling crack cocaine and to carrying the .38-caliber revolver in his waistband when he was at home. Lotoczky admitted to accusing Van of lying at certain times during the interview.

- 4 -

The jury convicted Van on all counts. Under the career-offender guideline, Van's advisory Guidelines range was 360 months to life. *See* U.S. Sentencing Guidelines Manual § 4B1.1. The district court sentenced Van to 360 months' imprisonment. He now appeals.

II.

A.

Van first claims that the district court erred in denying his pretrial Rule 8(a) motion to sever his felon-in-possession-of-a-firearm charge. Under Rule 8(a),

> [t]he indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

Fed. R. Crim. P. 8(a). We typically review this issue de novo, *United States v. Locklear*, 631 F.3d 364, 368 (6th Cir. 2011), by examining the allegations on the face of the indictment, *United States v. Deitz*, 577 F.3d 672, 691 (6th Cir. 2009), *cert. denied*, 130 S. Ct. 1720 (2010).[1] But we forgo this analysis because we determine that, even if the indictment improperly joined the counts against Van, any error qualifies as harmless. *See Locklear*, 631 F.3d at 369 (noting that a finding of misjoinder is subject to harmless-error review); *Miller v. Stovall*, 608 F.3d 913, 927 (6th Cir. 2010) (recognizing

---

[1]As the government acknowledged at oral argument, failure to renew a Rule 8(a) motion at the close of the evidence does not forfeit an improper-joinder claim. *See United States v. Chavis*, 296 F.3d 450, 457–58 (6th Cir. 2002).

that this court may conduct harmless-error review sua sponte but has no obligation to do so), *petition for cert. filed*, 79 U.S.L.W. 3404 (U.S. Dec. 21, 2010); *United States v. Mitts*, 396 F. App'x 296, 302–03 (6th Cir. 2010) (applying harmless-error review despite government's failure to argue for such review on appeal), *petition for cert. filed*, --- U.S.L.W. ---- (U.S. Feb. 11, 2011) (Nos. 10-9035, 10A546).

Under harmless-error review, we reverse only if the error affected the defendant's substantial rights by "hav[ing] a substantial and injurious effect or influence in determining the jury's verdict." *Locklear*, 631 F.3d at 369 (internal quotation marks and citation omitted). Factors demonstrating harmlessness include (1) the issuance of limiting instructions to the jury; (2) overwhelming evidence of guilt; and (3) the admissibility of evidence concerning the misjoined counts. *Chavis*, 296 F.3d at 461. The presence of each of these mitigating factors in Van's case supports our finding of harmless error.

"[T]he danger of prejudice resulting from improper propensity inferences can be reduced significantly by proper curative instructions." *Id*. at 461. Where the court issues such instructions, "[e]rror based on misjoinder is almost always harmless." *United States v. Cody*, 498 F.3d 582, 587 (6th Cir. 2007). "[W]e should presume that the jury followed this instruction and did not make an improper propensity inference." *Chavis*, 296 F.3d at 462. The district court thus likely offset any potentially prejudicial effect of the joinder with its curative instruction:

This defendant has been charged with several crimes. The number of charges itself is no evidence of guilt and this should not influence your decision in any way. It's your duty to separately consider the evidence that relates to each charge and to return a separate verdict for each one. For each charge, you must decide whether the Government has presented proof beyond a reasonable doubt that the Defendant is guilty of that particular charge. Your decision on one charge, whether it is guilty or not guilty, should not influence your decision on any of the other charges.

This court has previously found virtually identical instructions to significantly reduce the potential prejudice of any misjoinder. *See Cody*, 498 F.3d at 588; *Chavis*, 296 F.3d at 462.

The government, moreover, presented substantial—and possibly overwhelming—evidence against Van on the possession-of-a-firearm-in-furtherance-of-drug-trafficking charge. Yott testified that Van sold him crack cocaine and heroin while standing only a few feet from both a revolver and a shotgun. Although Van denied responsibility for that drug sale, he admitted that a revolver sat on the table during the transaction. Yott testified that Van carried this revolver during the ensuing drug buys, and that he and Van discussed the caliber of the firearm during a recorded buy—the tape of which the government played for the jury. Lotoczky corroborated Yott's statements, claiming that Van admitted to "carrying a 38 revolver in [his] waistband." Although Van refused to initial this statement following the interview, and denied making it, Lotoczky identified the portions of the interview videotape that reflected this statement.

Finally, Van does not contend that severing the felon-in-possession charge would have barred the government from introducing the underlying firearm in support of the possession-of-a-firearm-in-furtherance-of-drug-trafficking charge. He posits merely that the

government could not have introduced evidence of his felon status. The prejudicial effect of this information, however, was limited because the specific crime underlying his previous conviction was never revealed to the jury since Van stipulated to his felony status, "thereby preventing the jury from hearing testimony about it." *See Locklear*, 631 F.3d at 369.

Based on these factors, any error the district court may have committed in permitting joinder of these counts qualifies as harmless.

B.

Van next demands reversal of his convictions on counts one, two, three, and six, contending that the district court violated his right to due process and a fair trial when it described Yott as an expert witness without either formally qualifying him as such or distinguishing between Yott's factual and expert testimony. According to Van, this oversight bolstered Yott's "suspect" credibility.

In the challenged statement, the district court instructed the jury as follows:

> You have heard the testimony of Michael Yott, who testified as an expert witness and as a fact witness. Regarding his expert testimony, you should treat his expert opinion as any other expert opinion. You do not have to accept an expert's opinion. In deciding how much weight you give to it, you should consider the witness'[s] qualifications and how he reached his conclusions. Remember, that you alone decide how much of a witness'[s] testimony to believe and how much weight it deserves. You should consider that he was also a fact witness and participated in the investigation of this case in deciding how much of his expert testimony to believe or what weight to give it, if any.

Van's counsel objected to this instruction, arguing that Yott "was never qualified as an expert in this case." The district court acknowledged that Yott was not formally qualified as an expert, but held that the instruction could not "credibly be said to prejudice the jury in any way," especially because Yott "was, to some extent, treated as an expert."

"We review challenges to jury instructions under the abuse-of-discretion standard." *United States v. Williams*, 612 F.3d 500, 506 (6th Cir.), *cert. denied*, 131 S. Ct. 367 (2010).[2] "The Court considers the jury instructions as a whole to determine whether they fairly and adequately submitted the issues and applicable law to the jury." *Nolan v. Memphis City Sch.*, 589 F.3d 257, 264 (6th Cir. 2009) (internal quotation marks and citation omitted). "A judgment may be reversed based upon an improper jury instruction only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial." *Williams*, 612 F.3d at 506 (internal quotation marks and citation omitted).

Van's argument for reversal based on the district court's description of Yott as an "expert witness" during this jury instruction fails. Though Van cites a string of cases opining that courts should not describe a witness as an expert, *see, e.g.*, *United States v. Johnson*, 488 F.3d 690, 697–98 (6th Cir. 2007), none supports reversal of Van's convictions. The judge referred to Yott as an expert only once. And he did so in the context of a cautionary jury instruction, thereby mitigating any

---

[2]The government argues for plain-error review, claiming that, while Van objected to the disputed jury instruction below, he did so solely because Yott "was never qualified as an expert in this case." But we need not determine whether Van sufficiently preserved the basis for his objection articulated here because his argument fails even abuse-of-discretion review.

additional credence the jury might have granted. *See United States v. Serafino*, 281 F.3d 327, 331 (1st Cir. 2002) (finding "whatever special aura the jury might otherwise have attached to the term 'expert'" mitigated by instruction that "[e]xpert testimony should be considered just like other testimony" (alteration in original) (emphasis omitted) (internal quotation marks and citation omitted)).

Van's argument that the district court compounded this supposedly improper jury instruction by failing to qualify Yott as an expert similarly falters. To the extent that Yott's general statement regarding the frequency with which drug dealers carry firearms or his specific statements about the gun he observed in this case qualify as expert testimony, the district court appropriately permitted Yott—who had served as a Detroit police officer for two years and as an ATF special agent for twenty years—to offer such testimony without first formally qualifying him as an expert. *See United States v. Cobb*, 397 F. App'x 128, 139 (6th Cir. 2010) ("If a witness's qualifications are obvious, we have found that there is no need to formally qualify him as an expert."), *cert. denied*, 131 S. Ct. 1801 (2011); *United States v. Lopez-Medina*, 461 F.3d 724, 742–43 (6th Cir. 2006) (finding no abuse of discretion in district court's failure to qualify Drug Enforcement Administration agents before allowing their expert testimony).

Relying on *Lopez-Medina*, Van argues that the district court's failure to issue a cautionary instruction informing the jury of Yott's dual role as an expert and fact witness both before he offered any opinion evidence and again before deliberations merits reversal. But *Lopez-Medina* does not

require a district court to offer such instructions twice; it found error where the district court provided *neither* a cautionary jury instruction regarding the agents' dual roles *nor* a clear demarcation between their fact and expert testimony. 461 F.3d at 745. Here, the district court offered an expert-witness instruction and cautioned the jury that Yott testified in two capacities. This instruction, moreover, addressed the "particular concerns" that the *Lopez-Medina* court identified as arising when an officer gives expert testimony: it "guard[ed] against a jury mistakenly weighing opinion testimony as if the opinion were fact," "instruct[ed] the jury that they [were] free to reject the opinions given," and "address[ed] the additional risk of bias in forming expert conclusions regarding one's own investigation." *See id*. at 744; *see also United States v. Neeley*, 308 F. App'x 870, 878–79 (6th Cir. 2009) (finding no plain error despite instruction designating witness as an expert because the trial court addressed the "particular concerns" of *Lopez-Medina* by giving "a general instruction on witness credibility as well as an expert witness instruction").[3]

Finally, Van claims that three other trial events compounded the court's supposed error in describing Yott as an "expert." Although he does not say so explicitly, Van presumably pairs the challenged jury instruction with these events to argue that the cumulative effect of these supposed errors amounted to a denial of his due process right to a fair trial. *See United States v. Cobleigh*, 75

---

[3]Van also relies upon *United States v. Serafino*, 281 F.3d 327 (1st Cir. 2002), and *Scheidt v. Klein*, 956 F.2d 963 (10th Cir. 1992), two cases in which the district court instructed the jury regarding the evaluation of expert witness testimony. In both cases, the defendant *failed* to establish plain error. And the distinctions Van emphasizes do not compel us to find an abuse of discretion in his case.

F.3d 242, 249–50 (6th Cir. 1996). But none of the circumstances Van identifies converts the court's reference to Yott as an expert during jury instructions into reversible error.

Van first claims that the district court bolstered Yott's credibility and diminished defense counsel in front of the jury when it cut short counsel's cross-examination of Yott regarding the way he titled his investigation report and accused counsel of "wasting the jury's time." But the law does not require the court to remain a silent observer, and this single incident did not improperly bolster Yott's credibility. *See United States v. Powers*, 500 F.3d 500, 511–12 (6th Cir. 2007) (noting that judge "may interject himself into the trial, speak to counsel, and question witnesses," and finding court "within its discretion to move defense counsel along from a repetitive and irrelevant line of questioning").

Nor does the witnesses' supposed violation of a sequestration order further Van's argument. At the conclusion of Yott's testimony, Yott spoke with defense counsel regarding the distinction between a snub-nose revolver and a .38-caliber revolver. During this conversation, two other witnesses, Officers Amos and Estrada, approached, and Yott asked how they would describe the gun. When defense counsel moved for a mistrial—a motion the district court denied—the government argued that Yott did not discuss the substance of his testimony with the officers. Defense counsel, moreover, cross-examined Amos on this issue, exposing any possible collusion to the jury.

And Van's last claim—that the officers' failure to uncover a firearm during a search undermined Yott's testimony that Van carried a firearm during the third drug sale—also proves

unavailing. Though Van testified that the officers searched him, one of the officers involved testified that he and his partner stopped Van solely to ask for identification and that he never searched Van or his vehicle.

Because we reject all of the "errors" Van identifies, we conclude that he was not denied his due process right to a fair trial. *See United States v. Swidan*, 888 F.2d 1076, 1081 (6th Cir. 1989) ("There can be no accumulation of errors when no errors are found.").

C.

Finally, Van claims the sentencing court erred procedurally by treating the Guidelines as mandatory rather than advisory and failing to resolve a dispute about the nature of the Guidelines in open court. We review the sentence for an abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007).[4] A court commits procedural error by "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Id*.

---

[4]Abuse-of-discretion rather than plain-error review applies because the court failed to ask the parties if they had any unraised objections to the sentence. *See United States v. Bostic*, 371 F.3d 865, 872 (6th Cir. 2004); *see also United States v. Gapinski*, 561 F.3d 467, 473–74 (6th Cir. 2009) (finding that merely asking whether counsel had "[a]nything else for the record" did not satisfy *Bostic* requirement (internal quotation marks and citation omitted)).

We normally "presume that the district court understood its [sentencing] discretion, absent clear evidence to the contrary." *United States v. Santillana*, 540 F.3d 428, 431 (6th Cir. 2008). Here, however, the court sentenced Van in early 2008—in the wake of *Kimbrough v. United States*, 552 U.S. 85 (2007), and *Gall v. United States*, 552 U.S. 38 (2007), two cases that clarified courts' authority to grant variances. In similar cases where the fluctuating legal landscape has given us reason to question whether the district court understood its discretion to vary from the Guidelines, we have instead reviewed the record for "some indication of error" and required the appellant to demonstrate more than "mere conjecture" that the court felt improperly constrained. *See, e.g.*, *United States v. Kosack*, 366 F. App'x 642, 647–49 (6th Cir.), *cert. denied*, 130 S. Ct. 3339 (2010); *United States v. Maye*, 582 F.3d 622, 632–33 (6th Cir. 2009); *United States v. Guest*, 564 F.3d 777, 779–81 (6th Cir. 2009). We apply that standard here. Nevertheless, "by now, the default assumption is that sentencing courts are aware of their authority to vary from the Guidelines." *United States v. Borden*, 365 F. App'x 617, 621 (6th Cir. 2010) (reviewing the record for a "clear indication of error" (internal quotation marks and citation omitted)); *see also United States v. Castaneda-Comacho*, No. 09-6526, 2011 WL 1666898, at *2 (6th Cir. May 3, 2011) ("[W]e presume that the district court understood its discretion [to grant a departure or variance], absent clear evidence to the contrary." (alterations in original) (internal quotation marks and citation omitted)); *United States v. Ramirez-Soria*, No. 10-3148, 2011 WL 1462950, at *1 (6th Cir. Apr. 18, 2011) (presuming the district court understood its authority to vary and, accordingly, requiring the defendant to "adduc[e] clear evidence that the district judge erroneously believed he lacked discretion" to vary from the Guidelines range).

Van points to the judge's adjournment of his initial sentencing hearing to reflect on the then-recent *Kimbrough* and *Gall* decisions, which the defense argued broadened the judge's sentencing discretion. In adjourning the proceedings, the judge noted that he felt "very uncomfortable" and that he "want[ed] to feel more certain . . . that [he] ha[d] some idea of what [his] discretion [was] and how broad it [was] and some idea how [he] should use that discretion in this case." The judge sidestepped the issue when the sentencing hearing later resumed, Van argues, failing to resolve the issue of its discretion or to acknowledge the advisory nature of the Guidelines.

The court committed no procedural error. In adjourning the sentencing, the court merely acknowledged Van's argument and committed to granting it serious consideration. *See United States v. Damra*, 621 F.3d 474, 508 (6th Cir. 2010) (recognizing court's obligation to consider defendant's nonfrivolous arguments), *cert. denied*, --- S. Ct. ---- (2011). In the second hearing, moreover, the district court resolved the parties' dispute by recognizing its discretion to issue either a downward departure or a variance:

> My strongest concern at the earlier date in December was whether the criminal history used in the calculation of the sentencing guideline range overrepresented the seriousness of Mr. Van's criminal history, or the likelihood that the Defendant will commit further crimes. Your sentencing memoranda, Mr. Van, *argued strongly and persuasively . . . that this is a case for downward departure or variance* because the criminal history is overstated. *I've considered that a serious and heavy argument* in favor of moving the sentence to a lower level.

The court further explained its reasons for not departing or varying, noting Van's "continuing pattern of illegal behavior," including violating the conditions of his state parole by absconding twice in the previous five years.

The district court's discussion of the § 3553(a) factors indicates that it understood that it must not rely on the Guidelines as reasonable or mandatory but rather must consider all of the § 3553(a) factors to determine an appropriate sentence based on the individual circumstances: "I've considered [the § 3553(a)] factors, including the nature and circumstances of the offense and the life history of [Van]. *I've also considered whether or not the sentence arrived at by the sentencing guidelines properly reflects the [§ 3553(a) factors].*" *Cf. United States v. Simpson*, 346 F. App'x 10, 16 (6th Cir. 2009) (concluding that the totality of the record indicated that the district court misunderstood its authority despite the district court's multiple references to the advisory nature of the Guidelines).

Contrary to Van's arguments, the record does not indicate that the district court misunderstood its sentencing authority when addressing his request for a variance based on his criminal history.

III.

For the above reasons, we affirm Van's conviction and sentence.