**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0233n.06
Filed: May 5, 2008

No. 07-3038

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | **ON APPEAL** FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE SOUTHERN |
| | ) | DISTRICT OF OHIO |
| JOHN E. GLEASON, | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | **O P I N I O N** |
| | ) | |

Before:  MOORE and McKEAGUE, Circuit Judges, and SCHWARZER,[*] District Judge.

**KAREN NELSON MOORE, Circuit Judge.**   Defendant-Appellant John E. Gleason ("Gleason") appeals his sentence of seventy-eight months in prison, three years of supervised release, a fine of $2,500, and a $100 assessment following his plea of guilty to one count of traveling in interstate commerce with intent to engage in illicit sexual contact with a minor in violation of 18 U.S.C. § 2423(b).  Gleason challenges his sentence on two grounds.  First, Gleason argues that the district court failed to comply with Rule 32(h) of the Federal Rules of Criminal Procedure and provide notice that it was considering an upward variance.  Second, Gleason contends that his seventy-eight-month sentence, which exceeds the applicable Guidelines range, is substantively unreasonable.  Because we hold that Gleason *did* in fact receive notice of the grounds on which the

---

[*]The Honorable William W Schwarzer, United States District Judge for the Northern District of California, sitting by designation.

district court relied in imposing an upward variance and because we hold that the district court did not abuse its discretion in sentencing Gleason, we **AFFIRM** Gleason's sentence.

## I. BACKGROUND

Beginning on May 11, 2005, Gleason engaged in internet chats with an individual using the screen name "gwenoh" who claimed to be a fourteen-year-old girl from Columbus, Ohio, but who was in fact a Detective in the Dublin, Ohio Police Department. In their chats, Gleason described himself as a thirty-seven-year-old soldier in the Army, discussed various sexual activities, explained that because he had a vasectomy they could have sex without her becoming pregnant, and provided his phone number. A female employee of the Dublin Police Department called the provided number and confirmed plans to meet on May 27 at a park in Dublin, Ohio, and Gleason mentioned that he could bring some "Blackberry Merlot" wine. Joint Appendix ("J.A.") at 11 (Aff. in Support of Complaint at 3). On May 27, 2005, Gleason was arrested in Dublin after traveling to the specified park from Ft. Knox, Kentucky.

On May 31, 2005, Gleason was released on house arrest with electronic monitoring. Gleason, then a 49 year-old active-duty Sergeant First Class in the United States Army, was stationed at Ft. Knox, Kentucky, and his Bond Order required him to remain on the military base in Kentucky (except for court appearances or meetings with counsel), to report frequently to Pretrial Services, to refrain from using computers or accessing the internet. Gleason also agreed to pay for the costs of the electronic monitoring if he was financially able to do so after supporting his family. In May 2005, Gleason was married with two male children, ages sixteen and ten, who resided with their mother in Bowling Green, Ohio. Although stationed in Kentucky, Gleason considered Bowling Green his residence.

2

Investigation into Gleason revealed that he had previously chatted online with other female minors, discussed sexual activities with them, and offered to meet some of them. Gleason's computer contained images of nude or partially nude female minors, and a few images depicted underage females engaging in sexual acts. Gleason explained that his online correspondence with young girls began as a fantasy but became too real and that "it started as something to do, while he was away from his family serving in the Army." J.A. at 157 (Presentence Investigation Report ("PSR") at ¶ 27, 25). According to testimony presented at Gleason's sentencing hearing by Special Agent James Olmstead of the Defense Criminal Investigative Service of the Department of Defense, on two occasions Gleason had previously traveled to Akron, Ohio, to meet a girl who claimed to be nineteen years old but was in fact sixteen or seventeen years old. The two had been communicating "for a couple of years." J.A. at 91 (Sent. Hr'g Tr. at 25).

In August 2005, a grand jury indicted Gleason on two counts, the first count charging Gleason with traveling in interstate commerce with intent to engage in illicit sexual conduct with a minor in violation of 18 U.S.C. § 2423(b), and the second count seeking forfeiture of certain facilitating equipment, such as Gleason's computer and cellular phone, pursuant to 18 U.S.C. § 2253(a)(3). Gleason pleaded not guilty, and the district court set January 23, 2006, as the trial date.

On January 23, 2006, Gleason changed his plea and pleaded guilty to the first count in the indictment pursuant to a plea agreement and agreed to the forfeiture in the second count. At the change-of-plea hearing, the parties agreed to schedule the sentencing for sometime after July 31, 2006, so that Gleason could retire from the Army and so that his family could receive his retirement benefits. During this time, Gleason remained free on his original bond conditions.

In February 2006, the Probation Office completed Gleason's PSR. Using the 2005 edition of the United States Sentencing Commission Guidelines Manual, the probation officer arrived at a Total Offense Level of 23 for Gleason. An offense level of 23 combined with Gleason's criminal history category of I produced a Guidelines range of 46 to 57 months in prison. The probation officer recommended a sentence of 46 months, the bottom of the Guidelines range, because Gleason "has no prior record of arrest and has a good record of military service." J.A. at 166 (Sentencing Recommendation).

As of October 2006, the district court had not set a date for sentencing. On October 24, 2006, pre-trial services sought an arrest warrant for Gleason based on alleged bond violations regarding Gleason leaving his home without permission on the night of October 13 and lying twice about his activities on that night. Two days later, on October 26, the district court set a sentencing date for the morning of November 8, 2006. On October 31, 2006, a magistrate judge issued notice of a proceeding related to Gleason's alleged bond violation scheduled for the afternoon of November 8.

On November 2, 2006, Gleason filed a sentencing memorandum in which he argued for a sentence lower than the 46 months recommended by the Probation Office. Gleason argued that his "offense did not involve a victim," J.A. at 40-41 (Def.'s Sent. Mem. at 4-5), he was unlikely to be a recidivist, he had a good employment record with the U.S. military, and the seventeen months he had spent on home detention since his arrest constituted some measure of punishment already.

On November 6, the Government filed a sentencing memorandum in which it argued against any sentence lower than the Guidelines range. The government highlighted aspects of Gleason's conversation with the undercover officer, the images of nude teen and underage girls on his computer that it claimed "were actually child pornography," J.A. at 48 (Gov't Sent. Mem. at 3), and that

4

Gleason had previously met a minor whom he had contacted on the internet. The government also detailed "Gleason's extraordinarily poor behavior while on bond," J.A. at 51 (Gov't Sent. Mem. at 6), which included spending the night of October 13, 2006, off base with a woman "he met through an expensive phone based 'dating' service and with whom he had communicated on the Internet with the help of his friends," and lying "several times to his pre-trial services officer about the incident," J.A. at 50 (Gov't Sent. Mem. at 5). The government also pointed out that although Gleason's bond order committed him to paying for the cost of his electronic monitoring, he had only paid $100 toward that cost while paying approximately $300 per month to a telephone dating service.

In its sentencing memorandum, the government did not specifically request an upward variance, but the government did observe that "extraordinarily bad behavior after the offense should be considered as a basis of an upward departure." J.A. at 50 (Gov't Sent. Mem. at 5). Further, after noting Gleason's "total disrespect of his bond conditions," the government argued that his sentence "should not merely be at the upper end of the guideline range, it should also include a longer period of supervised release than the three years recommended" by the probation officer. J.A. at 51-52 (Gov't Sent. Mem. at 6-7). As a result, the government "recommend[ed] a sentence at the high end of the guideline range [of 46 to 57 months] and at least five years of supervised release." J.A. at 53 (Gov't Sent. Mem. at 8).

At the sentencing hearing, the government presented testimony from Jennifer Chadwick, a pre-trial services officer, regarding her reports on Gleason's alleged bond violation. Special Agent James Olmstead of the Defense Criminal Investigative Service of the Department of Defense also testified, describing Gleason's prior online communication with a minor from Akron, whom he traveled to meet and groped in his car. Olmstead testified about Gleason using his friends and his

son to send and receive emails to a thirty-two-year-old woman whom he had met using a telephone dating service.

Gleason's attorney cross-examined both government witnesses and established that no evidence showed that Gleason had contacted or communicated with any underage girls while on bond. Gleason then testified that he never had sexual intercourse with any person under eighteen years of age, that he took "full responsibility" for his bond violations, and that he had "panicked and lied" to his pre-trial services officer when confronted about his avoidance of electronic monitoring in October. J.A. at 113 (Sent. Hr'g Tr. at 47).

After verifying that Gleason had no objections to the PSR and that he had received it at least ten days in advance of the hearing and reviewed it with his attorney, the district court found that "under the applicable advisory guidelines, the total offense level is 23." J.A. at 115 (Sent. Hr'g Tr. at 49). The district court then invited Gleason's attorney to argue for a lower sentence under the factors contained in 18 U.S.C. § 3553(a). *Id.* Gleason's attorney outlined the arguments made in his sentencing memorandum, and in response the district court explained why those arguments were troublesome. The district court disputed that the offense did not involve a victim and suggested that Gleason's post-offense contact—contacting younger women through a telephone dating service and enlisting the assistance of his friends and son to communicate with women over the internet—indicated that recidivism was a risk for Gleason.

The district court then sought the government's views on the § 3553(a) factors, and after hearing the government's statement, the district court asked "why under all of these circumstances [relating to the bond violations] you have not sought an upward departure, and is there any basis for an upward departure in this case?" J.A. at 123, 121-23 (Sent. Hr'g Tr. at 57, 55-57). Counsel for

6

the government described "struggl[ing] with this" case and noted that the government's sentencing memorandum had sought "a longer term of supervised release [than that recommended by the probation officer] to make sure that [Gleason] gets it, because I don't think now he gets it." J.A. at 123 (Sent. Hr'g Tr. at 57).

The district court then asked again whether "there's a basis for an upward departure in this case" and the government responded that "[b]ased upon the bond violations . . . I think that there could be a foundation for an upward departure in this case." *Id.* The district court recited the considerations listed in § 3553(a)(2), and the government specifically pointed to the need to "protect the public from further crimes of the defendant" in § 3553(a)(2)(C). J.A. at 124 (Sent. Hr'g Tr. at 58). Given uncontested evidence in the PSR regarding Gleason groping a sixteen-year-old girl, the attorney for the government mentioned being concerned by the phrasing of the question that Gleason's attorney asked Gleason regarding whether Gleason had ever had "sexual intercourse" with a minor. *Id.* The district court queried why the government did not ask Gleason a follow-up question, and the government's attorney replied that "I didn't want to embarrass Mr. Gleason on the stand." J.A. at 125 (Sent. Hr'g Tr. at 59). The district court replied that"[i]f what he's done hasn't embarrassed him already, I don't know that anything would" and that "I would have not thought that you would have told me that you didn't ask someone accused and convicted who has pled guilty of this crime that you didn't ask the question because you didn't want to embarrass him." *Id.* Gleason's attorney then explained that he phrased his question to differentiate sexual intercourse from sexual contact, which apparently Gleason did not dispute occurred when he traveled to Akron to meet the sixteen- or seventeen-year old girl. J.A. at 126-27 (Sent. Hr'g Tr. at 60-61).

7

The district court then expressed "concern about the offense level in this case" and suggested that Gleason's case might be "appropriate for an upward departure" because the court was unsure "whether [Gleason's] post-offense behavior shows respect for the law or whether his post-offense behavior convinces me that this sentence adequately protects the public from further crimes of the defendant." J.A. at 127-28 (Sent. Hr'g Tr. at 61-62). The district court also queried whether "a sentence of 46 to 57 months will afford adequate deterrence" and stated a belief that "the testimony of [the government's witnesses] lead[s] me to believe that this case is a candidate for an upward departure because [] it appears to me that Mr. Gleason was continuing the same pattern that led to this underlying offense." J.A. at 128 (Sent. Hr'g Tr. at 62). Noting that "I have certainly departed downward when people have shown extraordinary post-offense or post-conviction rehabilitation," the district court suggested that an increased sentence might be appropriate "if someone displayed behavior that was inconsistent with any type of—not remorse so much as respect for the law or understanding of what he had done and the consequences of what he had done in the first instance." J.A. at 129 (Sent. Hr'g Tr. at 63).

At this point, the district court announced that "I disagree with the U.S. attorney that [the recommended sentence] is adequate in light of my analysis of § 3553(a)(2)(A), (B) and (C)" and stated that Gleason deserved a greater sentence in the range of 63 to 78 months.[1] J.A. at 129-30 (Sent. Hr'g Tr. at 63-64). The district court then invited comment from both Gleason's attorney and

---

[1]Although the district court described the sentence using the term "upward departure," J.A. at 129 (Sent. Hr'g Tr. at 63), the district court's analysis focused on the § 3553(a) factors, and both Gleason and the government have treated the sentence as a variance, and not a departure. *See, e.g.*, *United States v. Cousins*, 469 F.3d 572, 577 (6th Cir. 2006) (explaining that sentences outside the Guidelines based on the § 3553(a) factors are "variances" or "Non-Guideline departures," whereas sentences outside the Guidelines based on Chapter 5 of the Guidelines are "departures" or "Guideline departures").

the government, as well as an allocution from Gleason. Gleason's attorney did not object to the lack of notice that the district court was considering a sentence above the recommended guideline range in the PSR.

Gleason began his allocution by expressing remorse over his attempted meeting with an underage girl and stated that in his telephone dating activities he had "scrupulously avoided any kind of contact" with underage girls and that his telephone dating activities began only after his wife filed for divorce in August 2006. J.A. at 131-32 (Sent. Hr'g Tr. at 65-66). The district court interrupted and expressed concern that, because Gleason had reacted to a crisis like his wife's filing for divorce by going outside the law and obligations of his bond order, with Gleason's "history, your next step would be to go outside the letter of the law because you seem to have a penchant for underage young ladies." J.A. at 132 (Sent. Hr'g Tr. at 66). The district court continued, stating that "my view of [your offense] is that that's the most heinous of crimes," elaborating that "when someone of your age and maturity decides to deprive someone like a 14 year old of their innocence, to me that's a heinous crime, and there's very little worse in my view that you can do." J.A. at 132-33 (Sent. Hr'g Tr. at 66-67). Stating that "I'm not concerned about whether you would be embarrassed on the stand because no one was concerned about whether the 14 year old girl was going to be robbed of her youth," the district court then remarked that "if no one else protects those children, I will. So that's why I believe, in addition to the factors that I outlined, that this is a heinous offense, and that's why I have a real concern because of your post-conviction behavior that you can easily lapse back into that behavior." J.A. at 133-34 (Sent. Hr'g Tr. at 67-68). The district court then asked Gleason to continue with his allocution, and Gleason simply asked for the court's mercy.

9

Prior to announcing Gleason's sentence, the district court stated that "counsel will have a final opportunity to make any legal objections before the sentence actually is imposed." J.A. at 135 (Sent. Hr'g Tr. at 69). The district court then announced Gleason's sentence of seventy-eight months of imprisonment. J.A. at 135 (Sent. Hr'g Tr. at 69). After stating the sentence, the district court asked "[i]s there any objection to the sentence as stated." J.A. at 138 (Sent. Hr'g Tr. at 72). Gleason's attorney asked "the Court to note my objection to the Court's upward departure." *Id.* The government requested the court to clarify any findings it made in imposing the sentence, and the district court stated that "I accepted the factual statements set forth not only in the PSI but also based on the testimony" of the government witnesses. J.A. at 140-41 (Sent. Hr'g Tr. at 74-75).

On December 8, 2006, Gleason filed a motion for reconsideration of the sentence. Gleason asked the district court to "consider reducing [the] term of imprisonment to 57 months, which is at the high end of [Gleason's] acknowledged Sentencing Guideline range of 46 to 57 months . . . and which was originally requested by the Government." J.A. at 54 (Mot. to Reconsider Sent. at 1). Gleason acknowledged that "violat[ing] the Court's trust by disregarding the terms of his release" meant that he "may no longer merit much consideration for a downward departure." J.A. at 55 (Mot. to Reconsider Sent. at 2). Gleason also stated that his "counsel was provided with no notice to indicate that the Court was even considering an upward departure." J.A. at 56 (Mot. to Reconsider Sent. at 3). Gleason then filed his notice of appeal on January 3, 2007. Finally, on February 22, 2007, the district court filed the Judgment in this case, the final page of which was a Statement of Reasons explaining the sentence imposed.

In the Statement of Reasons, the district court wrote that "[t]he Court adopts the factual findings in the Advisory Guidelines Application in the Presentence Report except that the Court

10

finds that pursuant to the factors set forth in 18 U.S.C. § 3550(a) [sic], this case is appropriate for an upward departure from the Advisory Guidelines Range." J.A. at 170 (Judgment at 7). The district court then summarized the reasons stated at the hearing, stating that "while awaiting sentencing, [Gleason] left the military base on which he was required to remain, removed his monitoring device so that his locations could not be monitored, lied to sentencing officials, and used a telephone/internet chat room to meet a woman." *Id.* The district court then "conclude[d] that the Advisory Guideline Range is inadequate to promote in this defendant a respect for the law and to provide this defendant with just punishment for the offense." *Id.* (emphasis added).

## II. ANALYSIS

### A. Whether Gleason Received Notice of a Possible Upward Variance as Required by Rule 32(h)

#### 1. Legal Standards

Rule 32(h) provides that:

> Before the court may depart from the applicable sentencing range on a *ground not identified for departure* either in the presentence report or *in a party's prehearing submission*, the court must give the parties reasonable notice that it is contemplating such a departure. The notice must specify any ground on which the court is contemplating a departure.

FED. R. CRIM. P. 32(h) (emphasis added).

In *United States v. Cousins*, 469 F.3d 572, 580 (6th Cir. 2006), we held that Rule 32(h) "applies equally to [Guidelines] departures and § 3553(a) variances." In *United States v. Tate*, 516 F.3d 459, 466-67 (6th Cir. 2008), we decided that the plain-error standard of review applies when a defendant argues on appeal that the district court violated Rule 32(h) but the defendant did not object in the district court to the lack of notice of the possibility of an upward variance. We

11

explained that Rule 32(h) requires "'reasonable notice'" and that "'what constitutes reasonable notice will vary depending on the circumstances of the particular case.'" *Id.* at 467 (quoting *United States v. Ragland*, 226 F. App'x 507, 510 (6th Cir. 2007)). We have also suggested that "[e]ven if . . . the district court's notice was inadequate," affirming the defendant's sentence under the plain-error standard may still be proper when the defendant fails to demonstrate prejudice due to the lack of notice because "the evidence supporting an upward departure was essentially irrebuttable." *United States v. Meeker*, 411 F.3d 736, 746 (6th Cir. 2005); *see also Cousins*, 469 F.3d at 581.

Finally, we observed in *Tate* that "the Supreme Court has recently granted certiorari on the question of whether Rule 32(h) 'has any continuing application in light of *United States v. Booker*, 543 U.S. 220 (2005).'" 516 F.3d at 466-67 (quoting Question Presented, *Irizarry v. United States*, No. 06-7517, *available at* http://www.supremecourtus.gov/qp/06-07517.pdf). We explained that we would nonetheless consider the defendant's "Rule 32(h) objection based on the law as it has developed up to this point." *Id.*

**2. Analysis**

Gleason's Rule 32(h) claim fails for two reasons. First, his claim fails because Gleason *did* in fact receive notice of the ground on which the district court relied in imposing an upward variance. Second, Gleason cannot meet the requirements of the plain-error standard of review.

First, as noted above, the government's sentencing memorandum described Gleason's conduct that gave rise to the alleged bond violations, stated that the government would present evidence on these issues at the hearing, and even suggested that "extraordinarily bad behavior after the offense should be considered as a basis of an upward departure." J.A. at 50 (Gov't Sent. Mem. at 5). The district court explicitly based Gleason's sentence on Gleason's bad post-offense behavior,

12

citing this conduct both in the Statement of Reasons, J.A. at 170, and at the sentencing hearing, J.A. at 134 (Sent. Hr'g Tr. at 68) ("I have a real concern because of your post-conviction behavior that you can easily lapse back into that behavior."). Therefore, by its own terms, Rule 32(h) did not require that the district court give Gleason further notice because the district court did *not* in fact impose a variance based "on a ground not identified for departure . . . in a party's prehearing submission." FED. R. CRIM. P. 32(h); *see also Meeker*, 411 F.3d at 745-46 (finding that information contained in the PSR provided notice "sufficient to permit [the defendant's] attorney to meaningfully comment on the upward departure being considered by the district court").

Second, even if we did not view the government's sentencing memorandum as providing Gleason with notice that his post-offense conduct might warrant an upward variance, Gleason's claim fails under plain-error review. In *Meeker*, we held that "[a] sentencing court that fails to provide reasonable notice of its intention to depart from the Guidelines range [] commits plain error." 411 F.3d at 744. "'Having demonstrated obvious error, [Gleason] must establish an effect on his substantial rights, and a serious impact to the fairness, integrity or public reputation of the judicial proceeding, to fulfill the further requirements of the plain error test.'" *Cousins*, 469 F.3d at 580 (quoting *United States v. Lopez-Medina*, 461 F.3d 724, 745 (6th Cir. 2006)). In *Cousins*, we noted that prior decisions have examined whether a defendant could show "prejudice" and declined to grant relief "where 'the evidence supporting an upward departure was essentially irrebuttable.'" 469 F.3d at 581 (quoting *Meeker*, 411 F.3d at 746). The evidence of Gleason's post-offense behavior and bond violations is essentially undisputed in this case, and the government rightly notes that "[a]t sentencing, in the motion for reconsideration and in his opening brief, Gleason had three

13

opportunities to explain how the alleged lack of notice prejudiced him, but failed to do so."
Appellee Br. at 22; *see also* Reply Br. at 1 (again failing to show prejudice).

We therefore hold that Gleason's Rule 32(h) claim lacks merit.

**B. Whether Gleason's Sentence Was Substantively Unreasonable?**

**1. Legal Standards**

We review Gleason's substantive-reasonableness[2] challenge to his sentence using "an abuse-of-discretion standard" that "take[s] into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Gall v. United States*, 128 S. Ct. 586, 597 (2007). We may not apply a "presumption of unreasonableness" to sentences outside the Guidelines range, nor may we apply a "proportional review" that "uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." *Id.* at 595-96; *see also United States v. Bolds*, 511 F.3d 568, 580-81 (6th Cir. 2007) (holding that *Gall* effectively overturned *United States v. Davis*, 458 F.3d 491, 496 (6th Cir. 2006), and ended our practice of applying a form of proportionality review to outside-Guidelines sentences). We "may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Gall*, 128 S. Ct. at 597. Finally, that we "might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Id.*

---

[2]In his Reply Brief, Gleason conceded that "the district court did comply with the requirement of procedural reasonableness." Reply Br. at 2.

### 2. Analysis

Under the deferential abuse-of-discretion standard that the Supreme Court has established for reviewing the substantive reasonableness of sentences, we affirm Gleason's sentence.

The record in this case contains ample evidence that the district court imposed Gleason's sentence after carefully considering the facts and circumstances in this case and after devoting particular attention to the values contained in § 3553(a)(2)(A), (B), and (C). *See* J.A. at 129-30 (Sent. Hr'g Tr. at 63-64) ("I disagree with the U.S. attorney that [the recommended sentence] is adequate in light of my analysis of § 3553(a)(2)(A), (B) and (C)"); J.A. at 170 (Judgment at 7) ("It is apparent to the Court that a stricter sentence is required to afford adequate deterrence to this Defendant's criminal conduct, to protect the public from future crimes of this Defendant, and to impose upon this Defendant sufficient punishment to reflect the seriousness of the offense which he has committed.") (citing 18 U.S.C. § 3553(a)(2)(A), (B), and (C)). As the Supreme Court explained in *Gall*, when a district court supplies a "reasoned and reasonable decision that the § 3553(a) factors, on the whole, justif[y] the sentence," we should "give[] due deference" to that decision. *Gall*, 128 S. Ct. at 602. Accordingly, we affirm Gleason's sentence.

### III. CONCLUSION

For the reasons discussed above, we **AFFIRM** Gleason's sentence.