NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0272n.06

No. 09-6541

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| | | **FILED** |
| | | *Mar 12, 2012* |
| | | LEONARD GREEN, Clerk |

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | **ON APPEAL FROM THE** |
| | ) | **UNITED STATES DISTRICT** |
| **v.** | ) | **COURT FOR THE MIDDLE** |
| | ) | **DISTRICT OF TENNESSEE** |
| **MICHAEL BARNETT,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | OPINION |
| | ) | |

BEFORE: BOGGS and WHITE, Circuit Judges; BERTELSMAN, District Judge.[*]

PER CURIAM. Defendant-Appellant Michael Barnett ("Barnett") appeals the 60-month sentence imposed by the district court following Barnett's guilty plea to a charge of conspiracy to distribute hydrocodone.

Because the sentence imposed by the district court was both procedurally and substantively reasonable, we AFFIRM.

I.

On May 10, 2009, Barnett and co-defendant, Michael Newton ("Newton"), were working as subcontractors on a floor resurfacing project at a Huntsville, Alabama pharmaceutical company.

---

[*] The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

Newton obtained access to the hydrocodone area, and the two men stole the contents of a barrel containing 85,000 hydrocodone tablets, which they agreed to split between them.

On May 15, 2009, the United States filed a criminal complaint against Barnett charging him with a violation of 21 U.S.C. § 841(a)(1) for conspiring with Newton to knowingly and intentionally possess with the intent to distribute hydrocodone, a Schedule III controlled substance. (R. 1). On June 3, 2009, Barnett was indicted on that charge. (R. 22).

In September 2009, Barnett pled guilty to this charge without a plea agreement.[1] (R. 36). The district court set Barnett's sentencing for December 14, 2009. (R. 37).

During his pretrial detention, Barnett was held in the Robertson County Detention Center ("RCDC") in Springfield, Tennessee, a county jail under contract to house federal pretrial detainees.

Between June 2009 and November 11, 2009, Barnett committed numerous infractions at the RCDC involving racial and sexual harassment, property damage, and assault. Barnett was extremely disruptive, kicking and banging on walls until physically restrained; he intentionally broke five sprinkler heads, at a cost of $300 apiece; he intentionally flooded his cell by clogging the toilet; he made multiple racial slurs to an African-American guard and told him he would "blow his fucking head off;" he harassed female guards by writing notes inquiring about the color of their underwear and the appearance of their pubic hair; he was found with contraband, including a razor in his mouth; and he smeared his feces on the wall of his cell. (R. 72, Transcript of Sentencing Hearing, 7-14, 35-38; R. 65, Attachment 1).

On November 13, 2009, the district court sentenced Barnett's co-defendant, Newton, to 43 months' imprisonment, departing upward from the Guidelines range of 30-37 months due to the

---

[1] Newton also pled guilty.

large amount of hydrocodone pills involved in the offense. *See USA v. Newton*, M.D. Tenn. Case No. 1:09-cr-00005, R. 53.

On November 18, 2009, the Government sent Barnett's counsel copies of the incidents reports detailing Barnett's behavior at the RCDC, noting that the Government would use the information at Barnett's sentencing.

The Presentence Investigation Report ("PSR") prepared by U.S. Probation calculated Barnett's Guidelines range as 30 to 37 months. (PSR ¶ 54). The offense level computation did not include any enhancements. (*Id.* ¶¶ 15-23). Neither party objected to the PSR.

On December 14, 2009, the Government filed a Motion for Upward Departure or Upward Variance based on the quantity of drugs involved as well as Barnett's behavior while incarcerated at the RCDC, attaching copies of the incident reports and documents pertaining to the latter. (R. 65). This motion stated that it was based on both Sections 5K2.0 and 2D1.1, Application Note 16, of the United States Sentencing Guidelines, as well as on 18 U.S.C. § 3553(a). (*Id.*) As to Barnett's post-conviction conduct, the Government argued that his racially and sexually harassing behavior toward jail staff, his vandalism of jail property, and his assault of a jailer all warranted an upward departure or variance in his sentence, and that a sentence of 60 months' imprisonment was appropriate. (*Id.*) Barnett filed his own Sentencing Memorandum, seeking a downward variance at or below 30 months on the grounds that he was less culpable than his co-conspirator and because he had endured harsh conditions at the RCDC. (R. 62).[2]

---

[2] In a separate case, a different federal judge conducted an inquiry into the conditions of confinement at the RCDC, ultimately concluding that the conditions there would rise to the level of deliberate indifference. *See United States v. Tellis Williams*, M.D. Tenn. Case No. 3:09-cr-00090. Based in part on the ruling in *Tellis Williams*, Barnett was transferred to a different facility. Barnett also points to an altercation between him and a corrections officer at the RCDC as reasons for his unruly behavior, although the Government disputes Barnett's account of the altercation.

The district court conducted Barnett's sentencing hearing on December 15, 2009. (R. 72). In its opening remarks, the court stated: "Before the Court sentences you, you have the right to address the Court, and the Court will be pleased to hear from you." (R. 72 at 4). The court then heard testimony from several RCDC jailers regarding their interactions with Barnett at the jail and his violent and abusive conduct. (R. 72 at 7-14, 35-38).

The district court also heard testimony from an investigator from the Drug Enforcement Administration, who testified regarding the street value of hydrocodone tablets and the escalating abuse of prescription drugs in the United States and in Tennessee in particular. (R. 72 at 49-56). Finally, the defense put Barnett's sister on the stand. She testified that their father had been imprisoned and had tried to commit suicide; that Barnett had difficulty readjusting after serving twelve years in prison in Alabama; that he had a volatile relationship with his mother, who had kicked him out of her house after he was released from prison; that Barnett was troubled by the fact that he had no relationship with his twelve-year-old daughter; and that she had recommended that Barnett get mental-health treatment. (R. 72 at 57-69).

The court then asked whether there was any further proof on behalf of the defendant, and Barnett's attorney responded:

> No, Your Honor. Mr. Barnett, of course, would like to address the Court prior to imposition of sentencing, but no additional proof.

(R. 72 at 69).

The court then heard argument from the Government regarding its motion for an upward departure or variance. (R. 72 at 69-72). Barnett's counsel argued for a lesser sentence of 30 months based on the conditions at the RCDC, which he stated had exacerbated Barnett's mental-health problems. (R. 72 at 72-75).

The Government gave a brief rebuttal, after which the following colloquy occurred:

THE COURT: **Well, I'm going to grant the government's motion for an upward departure and an upward variance.** The Court finds that, because the offense here involves two times the maximum contemplated by the sentencing guidelines, **that that is a factor that the sentencing guidelines did not consider**, and, therefore, that is one basis.

The Court considers also the testimony of the agent that it is the – that these types of prescription drugs represent the largest amount of drug abuse that can cause serious harm to society and to individuals. **The Court is going to grant the variance under 3553(a) because the Court has to consider, among other things, the defendant's personal characteristics and personal history. And the Court will address that further in explaining its sentence.**

**You have the right to address the Court, Mr. Barnett, and the Court will be pleased to hear from you.**

MR. MUNDY: **Mr. Barnett has decided not to make a statement to the Court, Your Honor,**

THE COURT: All right.

(R. 72 at 78-79) (emphasis added).

The court then pronounced a sentence of 60 months' imprisonment, followed by three years of supervised release and other standard conditions. (R.72 at 79-80). The court gave the following explanation for this sentence:

> In imposing this sentence, the Court normally considers post-offense rehabilitation, and, therefore, the Court also considers his post-offense conduct. That conduct includes repeated threats to kill people, racial slurs, extremely vulgar sexist remarks, physical assaults, damages to property. And the Court believes, in looking at the defendant's criminal history, the first degree robbery conviction that he had, the amount of drugs that he – that were taken in this offense, and his post-offense conduct, in the Court's view shows a consistent disregard of the welfare and rights and safety of others. And that is the reason the Court believes that the maximum sentence is required.
>
> Although the Court recognizes he has a prior mental history, the Court would have to have expert testimony to justify what he did during the period of his incarceration in the County Jail as being caused by that conduct. The last diagnosis was of a depressive disorder. All of these acts were highly aggressive and violent acts, which would appear to be inconsistent with the diagnosis of depression.
>
> So those are the reasons for the Court's imposition of the [sentence]. The Court strongly recommends that this defendant be transferred as soon as practicable to the Butner facility. The Court believes he is in serious need of mental health for an assortment of problems as

reflected by the prior diagnosis, as well as the extreme conduct that he engaged in while he was in the County Jail.

(R. 72 at 80-81).

The court then asked counsel if there were any procedural or substantive objections to the sentence, and Barnett's counsel stated:

> Your Honor, under Bostik [*sic*] and the cases that have come down since, I object to the sentence both on procedural and substantive reasonableness grounds. I object too – Your Honor expressed, enumerated, reasons for a downward variance I set forth in my sentencing memorandum. And I object to Your Honor's failure to provide notice of an upward variance prior to the sentencing hearing today.

(R. 72 at 81).

The court responded:

> **Well, the procedural part of this was that the government filed a motion for an upward departure. There was no request for a continuance.** The downward departure motion is denied. The Court does not find that any other prisoner in the County Jail, who was subjected to the same conditions of confinement, engaged in any comparable behavior as to this defendant.
>
> . . . [T]his defendant has a prior armed robbery conviction, he engaged in post-events conduct that include death threats, include racial slurs, include various vulgar sexual statements toward the custodians there. And the Court believes that none of that conduct would warrant a downward departure.

(R. 72 at 81-82) (emphasis added).

On December 18, 2009, the district court filed its Statement of Reasons for Barnett's sentence. (R. 70). On the second page, in the section titled "Departure," the court checked the box stating that the sentence departed above the guideline range, and under "Reasons for Departure" the court checked three boxes: (1) "5K2.0 Aggravating or Mitigating Circumstances"; (2) "5K2.8 Extreme Conduct": and (3) "Other." (*Id.*).

In the narrative Statement of Reasons on the third page, the court stated:

> The Court grants the government's motion for an upward **variance** because of the amount of drugs involved. Because the offense here involves twice the amount of drugs

contemplated by the sentencing guidelines, the Court believes it should take this fact into account. The Court also notes evidentiary testimony that the drugs involved here are one of the most pernicious types of drug abuse at the current time. **Under section 3553(a), the Court has taken into consideration the relevant factors, including the quantity of drugs and post-offense conduct such as threats to kill others, damage to property, racial slurs, and vulgar sexual harassment.** The Court sees defendant's conduct and past criminal history (including violent conduct) as representative of a persistent disregard to the rights, property, welfare, and safety of others, and thus the maximum sentence is required here. Although the Court recognizes the defendant's past mental health history, the Court would require expert testimony regarding the defendant's recent behavior in the county jail to be tied to past mental health diagnoses. **These factors justify the upward variance**, and the Court finds that this sentence is the appropriate sentence for this defendant, and is necessary to effectuate the goals of sentencing.

(R. 70 at 3) (emphasis added).

The section titled "Additional Reasons for Departing From the Guideline Range" was left blank. (*Id.*).

Barnett filed a timely notice of appeal on December 22, 2009. (R. 71).[3]

## II.

This court reviews criminal sentences for procedural and substantive reasonableness under the deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). The reasonableness test applies equally to sentences that are the product of departures as well as variances. *United States v. Vowell*, 516 F.3d 503, 513 (6th Cir. 2008) (citation omitted). Other standards of review that apply to specific issues raised by Barnett are discussed in the following analysis.

## III.

Barnett's first argument on appeal is that the district court, in sentencing him above the Guidelines range, imposed a "departure" of which it failed to give him reasonable notice. "Departures" and "variances" are, of course, distinct concepts:

---

[3] Newton also appealed, but on October 4, 2011, he filed a motion to voluntarily dismiss his appeal, which we granted.

A Guidelines "departure" refers to the imposition of a sentence outside the advisory range or an assignment of a criminal history category different than the otherwise applicable category made to effect a sentence outside the range. Importantly, a departure results from the district court's application of a particular Guidelines provision, such as § 4A1.3 or § 5, Part K. A "variance" refers to the selection of a sentence outside the advisory Guidelines range based upon the district court's weighing of one or more of the sentencing factors of [18 U.S.C.] § 3553(a). While the same facts and analyses can, at times, be used to justify both a Guidelines departure and a variance, the concepts are distinct.

*United States v. Borden*, 365 F. App'x 617, 619 n.2 (6th Cir. 2010) (citation omitted).

This court has "'not required that district courts carefully distinguish between whether the decision to deviate from the advisory Guidelines range is based on a departure or variance.'" *Id.* at 621 (quoting *United States v. Herrera-Zuniga*, 571 F.3d 568, 586 (6th Cir. 2009)). Thus, the district court's "choice of vocabulary is not dispositive." *Id.* Instead, this court "must examine the transcript of the sentencing hearing to determine whether the court was aware of the proper sentencing procedure and its authority to vary from the Guidelines range." *Id.*

With respect to notice of a departure, Fed. R. Crim. P. 32(h) provides:

**Notice of Possible Departure from Sentencing Guidelines.** Before the court may depart from the applicable sentencing range *on a ground not identified for departure either in the presentence report or in a party's prehearing submission*, the court must give the parties reasonable notice that it is contemplating such a departure. The notice must specify any ground on which the court is contemplating a departure.

Fed. R. Crim. P. 32(h) (emphasis added).

According to the Supreme Court, Rule 32(h)'s notice requirement applies to Guidelines-based departures but not to variances under § 3553(a). *Irizarry v. United States*, 553 U.S. 708, 714-16 (2008).

The district court here admittedly used both departure and variance-based language in its oral pronouncements during Barnett's sentencing hearing and, indeed, the Government's motion for an upward deviation cited both the Guidelines and § 3553(a) in arguing for a higher sentence. (R. 65).

Nonetheless, a close reading of the sentencing transcript strongly suggests that, to the extent that the court based the upward deviation on the quantity of the drugs involved, it was relying on U.S.S.G. §§ 5K2.0(2)(A) and (3), which address departures based on circumstances "not adequately taken into consideration" in determining the Guidelines range, as well as on Application Note 16 to U.S.G. § 2D1.1, which pertains to upward departures based on drug quantities which exceed the amounts contemplated by the offense levels for the controlled substance at issue.[4] The court stated:

> Well, I'm going to grant the government's motion for an upward departure and an upward variance. The Court finds that, because the offense here involves two times the maximum amount contemplated by the sentencing guidelines, that *that is a factor that the sentencing guidelines . . . did not consider*, and, therefore, that is one basis.

(R. 72 at 78) (emphasis added). The emphasized language, of course, tracks the above-cited Guidelines language for upward departures.

To the extent that the district court varied upward based on the testimony regarding the prescription drug abuse problem, Barnett's personal history, and his post-conviction conduct at the RCDC, the court expressly stated that it was relying on § 3553(a). (R. 72 at 78, 80-82). That aspect of the increase thus constitutes a variance.[5]

---

[4] Application Note 16 states:

> In an extraordinary case, an upward departure above offense level 38 on the basis of drug quantity may be warranted. For example, an upward departure may be warranted where the quantity is at least ten times the minimum quantity required for level 38. Similarly, in the case of a controlled substance for which the maximum offense level is less than level 38, an upward departure may be warranted if the drug quantity substantially exceeds the quantity for the highest offense level established for that particular controlled substance.

U.S. Sentencing Guidelines Manual § 2D1.1 cmt. n. 16 (2008).

[5] Because the increase for post-conviction conduct was a variance rather than a departure, Barnett's argument that the court erred in relying on conduct unrelated to the offense of conviction is without merit. *See, e.g., United States v. Ragland*, 226 F. App'x 507, 511 (6th Cir. 2007) (holding that district court properly considered defendant's recent, post-conviction assault in imposing upward variance under § 3553(a)).

This distinction ultimately proves immaterial to Barnett's notice argument, however, because, even if some aspect of the upward deviation was a "departure" entitling Barnett to notice under Rule 32(h), he received such notice by virtue of the Government's pre-sentencing motion for an upward departure/variance. (R. 65). That motion discussed both the drug quantity and Barnett's conduct at the RCDC as grounds on which the court should impose a 60-month above-the-Guidelines sentence.

As noted, Rule 32(h) contemplates that notice may be provided through a "party's prehearing submission," and this court has held that a sentencing memorandum filed by the Government which details a defendant's post-conviction bad behavior is sufficient to constitute notice of a possible upward departure on those grounds as required by Rule 32(h). *See United States v. Gleason*, 277 F. App'x 536, 543-44 (6th Cir. 2008).[6] Likewise, when the defendant knows or learns through other means of the basis for the departure and the fact that it may be considered by the court, the notice requirement is satisfied. *See Ragland*, 226 F. App'x at 510-11 (holding no violation of notice requirement because defendant knew his assault on his attorney was being considered by the district court, and he failed to suggest how he would have proceeded differently had he been given greater notice); *United States v. Meeker*, 411 F.3d 736, 743-46 (6th Cir. 2005) (holding that defendant was put on notice regarding victim impact issue through PSR; last-minute formal notice from court that it may be basis for upward departure was thus sufficient).

---

[6] The district court here stated to defense counsel when he objected to a lack of notice after the sentence was imposed: "Well, the procedural part of this was that the government filed a motion for an upward departure. There was no request for a continuance." (R. 72 at 81).

IV.

Barnett's next argument is that the district court erred by departing upward based on the

"extreme conduct" policy statement contained in U.S.S.G. § 5K2.8. (Appellant's Principal Brief

at 25-39). That provision states:

> If the defendant's conduct was unusually heinous, cruel, brutal, or degrading to the
> victim, the court may increase the sentence above the guideline range to reflect the
> nature of the conduct. Examples of extreme conduct include torture of a victim,
> gratuitous infliction of injury, or prolonging of pain or humiliation.

U.S. Sentencing Guidelines Manual § 5K2.8 (2008).

This provision clearly has no application to Barnett's crime or sentence, nor did the

Government rely on it in moving for an upward departure. Further, nowhere in the sentencing

transcript does the district court mention this provision or suggest that it had any bearing on its

sentencing evaluation.

Instead, the sole basis for Barnett's argument is that the district court checked the § 5K2.8

Extreme Conduct box on the Statement of Reasons form filed after sentencing. (R. 70 at 1). No

explanation for this notation is apparent. Nonetheless, the district court made it clear at the hearing

that the "extreme conduct" which it was considering was Barnett's behavior while incarcerated at

the RCDC, not anything related to the commission of his underlying crime. (R. 72 at 81).

As noted, in reviewing a sentence, this court looks to the transcript of the sentencing hearing

for the substance of what the district court considered to ensure the proper procedures were

followed. *Borden*, 365 F. App'x at 621. Something that is effectively a typographical error should

not override this analysis.

At most, the error is harmless because, given that the substance of what the district court

considered in fashioning Barnett's sentence did not encompass anything related to "extreme

conduct" in the § 5K2.8 sense, none of Barnett's "substantial rights" were affected by the district

court checking the wrong box on a form.[7]  *See United States v. Lanesky*, 494 F.3d 558, 561 (6th Cir. 2007) (discussing harmless error standard).[8]

V.

Barnett's next argument as to procedural unreasonableness is that the district court failed to give a clear statement of its reasons for the sentence it imposed.  However, Barnett failed to state such an objection before the district court when given an opportunity to do so after the district court announced its sentence.  (R. 72 at 81).[9]  This alleged deficiency is thus reviewed only for plain error. *See United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (citing *United States v. Bostic*, 371 F.3d 865, 872-73 (6th Cir. 2004)).

The "plain error" standard requires Barnett to show "(1) error (2) that was obvious or clear, (3) that affected [his] substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings."  *Id.* at 386 (citation omitted) (internal quotation marks omitted).  This court will find such error only in "exceptional circumstances."  *Id.*

"Procedural reasonableness requires that a district court must properly calculate the guidelines range, treat the guidelines as advisory, consider the § 3553(a) factors and adequately explain the chosen sentence -- including an explanation for any variance from the guidelines." *United States v. Lanning*, 633 F.3d 469, 474 (6th Cir. 2011) (citation omitted).

---

[7] This court also has noted, with respect to conflicts regarding the length or terms of a sentence imposed, that the oral sentence controls.  *See United States v. Penson*, 526 F.3d 331, 334 (6th Cir. 2008) (citation omitted).

[8] Barnett's reliance on *Lanesky* for his argument that any error was not harmless is misplaced. There, the district court completely failed to calculate a correct guideline range.  *Id.* at 561.  No such mistake is alleged here.

[9] Barnett's blanket statement that he objected to the sentence "both on procedural and substantive reasonableness grounds" is insufficient to avoid this rule, as *Bostic* requires that the party "clearly articulate any objection *and the grounds upon which the objection is based*."  *Bostic*, 371 F.3d at 872 (emphasis added).  *See also United States v. Simmons*, 587 F.3d 348, 358 (6th Cir. 2009) (requiring an objection with enough specificity to allow district court opportunity to address claim).

The record shows that the district court gave both parties the opportunity to argue for a sentence they believed appropriate, and the court adequately explained the reasons that it decided to impose a sentence above the Guidelines range. The court expressly relied on the large quantity of drugs involved in Barnett's offense, which was twice that contemplated by the Guidelines. (R. 72 at 78). The court also noted, under § 3553(a), that he was considering Barnett's personal characteristics and history, including his post-conviction conduct at the RCDC and his prior conviction for armed robbery, both of which the court opined showed " a consistent disregard of the welfare and rights and safety of others." (*Id.* at 80). The district court further noted that Barnett appeared to be in "serious" need of mental-health treatment, which he could obtain while incarcerated. (*Id.* at 81).

Because the district court adequately explained the chosen sentence and the reasons for deviating from the Guidelines range, Barnett's claim of procedural unreasonableness fails. *See United States v. Johnson*, 640 F. 3d 195, 207-08 (6th Cir. 2011); *United States v. Smith*, 505 F.3d 463, 467-68 (6th Cir. 2007).[10]

VI.

"District courts are obligated to impose 'a sentence sufficient, but not greater than necessary' to fulfill the purposes of sentencing." *Lanning*, 633 F.3d at 474 (quoting 18 U.S.C. § 3553(a)). "A sentence may be substantively unreasonable if the district court chooses the sentence arbitrarily, grounds the sentence on impermissible factors, or unreasonably weighs a pertinent factor." *Id.* (citation and internal quotations omitted).

---

[10] *United States v. Grams*, 566 F.3d 683 (6th Cir. 2009), on which Barnett relies, is distinguishable because the district court in that case did not provide any specific reason for sentencing the defendant above the Guidelines range. *Id.* at 688. In contrast, the district court here explained several relevant reasons for concluding that Barnett should be sentenced to a term of imprisonment beyond the range.

Under the applicable abuse of discretion review, this court gives due deference to the district court's "'reasoned and reasonable decision that the § 3553(a) factors, on the whole, justified the sentence.'" *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008) (quoting *United States v. Gall*, 552 U.S. 38, 59-60 (2007)).

The district court sentenced Barnett to 60 months' imprisonment, while the 2008 Guidelines range was 30-37 months. The court did not base its sentence on improper factors because the amount of drugs, criminal history, need for mental health care, and post-conviction conduct are all relevant factors in the § 3553(a) analysis. *See Lanning*, 633 F.3d at 474-76.

Barnett argues that he was punished for "having reacted poorly to the harsh conditions of confinement at the RCDC." (Appellant's Principal Brief at 54). The district court considered this argument but concluded that, without expert testimony, the court had no basis on which to find a causal connection between Barnett's past mental history and his behavior at the RCDC. (R. 72 at 80). Under the deferential standard governing this issue, this court cannot say that such reasoning constitutes an abuse of discretion.

Therefore, Barnett's claim of substantive unreasonableness fails.

## VII.

"If a defendant objects at sentencing to some limitation on his or her right of allocution, that claim is reviewed de novo." *Lanning*, 633 F.3d at 476 (citation omitted). Where the defendant does not object, this court reviews the claim only for plain error. *United States v. Carter*, 355 F.3d 920, 926 (6th Cir. 2004) (citation omitted).

Here, Barnett concedes that he did not object during sentencing to the timing of the district court's invitation for him to allocute. This court thus reviews this claim for plain error. Even under a de novo standard, however, the claim fails.

"Fed. R. Crim. P. 32(c)(3)(C) requires the court to 'address the defendant personally and determine whether the defendant wishes to make a statement and to present any information in mitigation of the sentence.'" *Carter*, 355 F.3d at 926 (citation omitted). Denial of allocution is reversible error. *Id.*

"A denial generally occurs when a defendant is not, personally and unambiguously, invited to address the court before sentencing," or "when a court refuses to listen to the defendant's statement." *Id.*

Barnett argues that his right to allocute was violated because, prior to inviting Barnett to speak, the court discussed and then granted the Government's motion for an upward variance. This argument is contrary to this court's precedent.

In *United States v. Wolfe*, 71 F.3d 611 (6th Cir. 1995), this court held that the defendant's right to allocute was not violated where, prior to inviting the defendant or his attorney to speak as to mitigation, the court overruled the defendant's objections to the PSR with respect to the amount of loss and acceptance of responsibility. *Id.* at 614-15. The *Wolfe* court stated:

> As an initial matter, it is important to note that neither the right to allocute in Fed. R. Crim. P. 32(c)(3)(B) & (C), nor the procedures for dealing with controverted matters in Fed. R. Crim. P. 32(c)(1) indicate that a judge may not state his ruling on the objections raised to the PSR, or to other sentencing matters, before the defendant or his counsel is given a chance to speak. None of the relevant rules adopt the chronological requirement Wolfe urges upon this Court.
>
> . . .
>
> Wolfe desires a mechanical interpretation of the right of allocution, and allocution is not such a right.

*Id.* (citation omitted).

More recent cases also support this proposition. *See United States v. Ellison*, 336 F. App'x 483, 490 (6th Cir. 2009) (holding that defendant's right to allocute was not violated where court

made its decision as to acceptance of responsibility and obstruction of justice without first allowing counsel to provide oral argument on those issues); *United States v. Crittenden*, No. 98-5399, 1999 WL 993928, at \*3-\*4 (6th Cir. Oct. 20, 1999) (holding no denial of right of allocution at sentencing where court overruled defendant's objections to PSR before allowing him or his counsel to speak).

These cases control here. First, the court told Barnett at the outset of the sentencing hearing that he had the right to address the court and that the "Court will be pleased to hear from you." (R. 72 at 4). Following argument on the variance issues, the court stated it would grant the Government's motion; however, the court did not indicate how much of a variance it would grant, nor did it state what the sentence would be. (R. 72 at 78).

Instead, the court explained that it would consider the factors under 3553(a), including "the defendant's personal characteristics and personal history." (*Id.*). At that point, the court addressed Barnett personally, stating: "You have the right to address the Court, Mr. Barnett, and the Court will be pleased to hear from you." (R. 72 at 79). Barnett declined. (*Id.*).

It is evident from this transcript that the court fulfilled its obligation under Rule 32 to allow Barnett the opportunity to address the court before any sentence was finally imposed. Therefore, Barnett's right of allocution was not denied.

VIII.

For the foregoing reasons, we AFFIRM.